UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THE INTERNATIONAL ASSOCIATION OF
HEAT AND FROST INSULATORS AND ALLIED
WORKERS LOCAL 12 OF NEW YORK CITY,
WELFARE FUND OF HEAT AND FROST
INSULATORS LOCAL 12, PENSION FUND
OF HEAT AND FROST INSULATORS LOCAL 12,
VACATION FUND OF HEAT AND FROST
INSULATORS LOCAL 12, ANNUITY FUND OF
HEAT AND FROST INSULATORS LOCAL 12,
APPRENTICE JOURNEYWORKER  EDUCATION
FUND  HEAT AND FROST INSULATORS
LOCAL 12,

                              Plaintiffs,

       - against -

MINOSIS GROUP, INC., MIMGT LLC, MINOSIS
INC., MITG LLC, MARIDO INDUSTRIES, INC.,
MICHAEL THEODOROBEAKOS a/k/a MICHAEL
THEODOR and GRECIA THEODOROBEAKOS
a/k/a GRACE THEODOROBEAKOS a/k/a
GRACE THEODOR,

                           Defendants.

-------------------------------------------------------------------X

Civil Action    20-cv-5948

**COMPLAINT**

       Plaintiffs THE INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ALLIED WORKERS LOCAL 12 OF NEW YORK CITY, ("Local 12" or the "Union"), WELFARE FUND OF HEAT AND FROST INSULATORS LOCAL 12, PENSION FUND OF HEAT AND FROST INSULATORS LOCAL 12, VACATION FUND OF HEAT AND FROST INSULATORS LOCAL 12, ANNUITY FUND OF HEAT AND FROST INSULATORS LOCAL 12, APPRENTICE JOURNEYWORKER EDUCATION FUND  HEAT AND FROST INSULATORS LOCAL 12, (collectively, the "Funds"); and, collectively referred to herein as "Plaintiffs," by their attorneys, COLLERAN, O'HARA & MILLS L.L.P., as and for their Complaint against Defendants MINOSIS GROUP, INC., MIMGT LLC, MINOSIS INC., MITG LLC, MARIDO INDUSTRIES, INC., MICHAEL THEODOROBEAKOS a/k/a

MICHAEL THEODOR, and GRECIA THEODOROBEAKOS a/k/a GRECIA THEODOROBEAKOS a/k/a GRACE THEODOR (collectively, the "Defendants"), allege as follows:

## INTRODUCTION

1.     This is a civil action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq*., and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, by Trustees of multiemployer benefit funds sponsored by Local 12, and the Union, to recover benefit fund contributions owed to them under the terms of a Collective Bargaining Agreement ("CBA") and trust fund documents, from a signatory employer and its alter ego identities, as well as its principal officers, who fraudulently schemed to avoid those contributions by establishing alter ego entities to perform work covered by the employer's collective bargaining agreement with the Union.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 29 U.S.C. §§1132(a)(3), 1132(e)(1) and 1132(f).

3.     The Court also has jurisdiction pursuant to §301 of the LMRA, 29 U.S.C. §185, as Defendants have violated the terms of a CBA between an employer and a labor organization.

4.     Venue lies in this District under 29 U.S.C. §1132(e)(1) and 29 U.S.C. §185(a), as Local 12 has its principal place of business in this District and the Funds are administered in this District.

## THE PARTIES

5.      Local 12 is a "labor organization" within the meaning of §2(5) of the LMRA, 29 U.S.C. §152(5), with its principal place of business at 15-32 127th Street, College Point, New York 11356.

6.      The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§1002(3) and (37), with their principal place of business at 15-32 127th Street, College Point, New York 11356.

7.  The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with §302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).

8.      MINOSIS GROUP, INC. ("MINOSIS GROUP") is a New York corporation organized on March 11, 2014 with offices located at 22-50 46th Street, Astoria, New York 111056.

9.      MIMGT LLC ("MIMGT") is a Foreign New Jersey Limited Liability Company with offices located at 22-50 46th Street, Astoria, New York 111056. Although MIMGT is not registered to do business in New York State, public filings from the U.S. Small Business Administration show that MIMGT received a Paycheck Protection Program loan in April 2020 and listed its place of business in Astoria, New York.

10.      MINOSIS, INC. ("MINOSIS") is a Foreign New Jersey corporation registered to do business in New York as of August 21, 2007 with offices located at 285 West Saddle River Road, Upper Saddle River, New Jersey 07458.

11.      MITG LLC ("MITG") is a Foreign New Jersey Limited Liability Company registered to do business in New York as of January 2, 2008 with offices located at 225 Broadway, 13th Floor, New York, New York 10007.

12.     MARIDO INDUSTRIES, INC. ("MARIDO") is a New York corporation located at 255 Highland Cross, Rutherford New Jersey 07070.

13.     MICHAEL THEODOROBEAKOS a/k/a MICHAEL THEODOR, ("MICHAEL THEODOROBEAKOS") is a natural person residing at 285 West Saddle River Road, Upper Saddle River, New Jersey 07458.

14.     GRECIA THEODOROBEAKOS, a/k/a GRACE THEODOROBEAKOS, a/k/a GRACE THEODOR, ("GRECIA THEODOROBEAKOS") is a natural person residing at 285 West Saddle River Road, Upper Saddle River, New Jersey 07458.

15.     Defendants are and were at all relevant times, engaged in an industry affecting commerce and "employer(s)" within the meaning of the National Labor Relations Act, (hereinafter "NLRA") §§2(2) and 301(a), 29 U.S.C. §§152(a) and 185(a), and ERISA. §§3(5) and 515, 29 U.S.C. §§1002(5) and 1145.

## STATEMENT OF FACTS

### THE UNION COMPANIES AND THEIR COLLECTIVE BARGAINING AGREEMENT

16.     Local 12 is a building and construction trade union whose territorial jurisdiction covers the five (5) Boroughs of New York City, and Nassau and Suffolk counties on Long Island.

17.     Local 12 has a current CBA with Defendant MINOSIS GROUP.  Over the past twenty years, Local 12 has had agreements with non-party Minosis Contracting, Defendants MINOSIS and MINOSIS GROUP (hereinafter referred to as "the Union Companies"). During these past two decades, the owners and executive officers of Minosis Contracting, MINOSIS and MINOSIS GROUP have been and continue to be MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS.

18.     At all relevant times, Defendants MINOSIS and MINOSIS GROUP employed members of Local 12 to perform mechanical insulation construction. Local 12 members James "Jimmy" Market, Thomas "Tommy" Vincent and Zoran Miranovic regularly worked for the Union Companies for the past decade.

19.     The CBA provides that Local 12 is the exclusive bargaining agent for its members that are engaged in the performance of  "mechanical insulation" such as the preparation, fabrication, alteration, application, erection, assembling, molding, spraying, pouring, mixing, hanging, adjusting, repairing, dismantling, reconditioning, maintenance, finishing and/or weatherproofing of cold or hot thermal and/or acoustical insulation with such materials as may be specified when these materials are to be installed for thermal purposes in voids, or to create voids, or on either piping, fittings, valves, boilers, ducts, flues, tanks, vats, equipment, fire stops and seals, walls, ceilings, and beams, or any hot or cold surfaces for the purpose of thermal control and all labor connected with the handling and distribution of all materials and equipment of job premises and all other such work that is within the jurisdiction of Local 12.

20.     The CBA requires that in addition to union scale wages, the employer must pay assessments and contributions for every hour of work by an employee performing any work covered by Article XI of the CBA. The CBA requires the Union Companies to submit periodic reports along with payment for contributions to the Funds, and payment of working assessments to Local 12 and the industry promotion fund for covered work. These periodic remittance reports state the number of hours each employee worked in covered employment and contributions required to be submitted pursuant to the CBA. The Funds rely on the remittance reports to determine participation in the Funds and the level of benefits, if any, that are to be provided to those workers reported by the Union Companies.

21.     The CBA includes a "no subcontracting clause" that requires any work covered by the agreement to be performed by Local 12 union members or signatory employers with Local 12.

## THE NON-UNION COMPANIES

22.     At all relevant times, the Defendants MIMGT, MITG and MARIDO., were employers engaged in the performance of "mechanical insulation" work within the five (5) Boroughs of greater New York City and Nassau and Suffolk counties.

23.     Defendants MIMGT, MITG and MARIDO, are non-union employers, meaning that they have not signed the CBA. Defendants MIMGT, MITG and MARIDO did not pay union wages to its employees, did not pay working assessments to the Local 12 General Fund, and did not pay employee fringe benefit contributions to the Funds.

## MINOSIS, MINOSIS GROUP, MIMGT, MIGT AND MARIDO ARE A COMMON ENTERPRISE, SINGLE EMPLOYER, ALTER-EGOS, AND/OR DOUBLE-BREASTED ENTERPRISES WITH EACH OTHER

24.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have common management in MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS.

25.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same business purposes of performing mechanical insulation installations.

26.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same inter-relationship of operations and employees, including using the same forepersons.

27.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same equipment.

28.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same customers.

29.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same supervision and control as all are under the control of MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS, and each company shares supervisors including, *inter alia,* Adolfo Veloz, Jeronimo Veloz and Juan Garcia, as discussed in further detail herein

30.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same centralized control of labor relations.

31.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same suppliers of materials.

32.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO shared employees.

33.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO have the same ownership.

34.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO are owned and operated by and among family members.

35.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP are owned by GRECIA THEODOROBEAKOS and MICHAEL THEODOROBEAKOS.

36.     Upon information and belief, Defendant MIMGT is owned by GRECIA THEODOROBEAKOS and MICHAEL THEODOROBEAKOS.

37.     Upon information and belief, MARIDO is owned by GRECIA THEODOROBEAKOS and MICHAEL THEODOROBEAKOS.

38.     Upon information and belief, Defendants MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS are husband and wife and have been married at all relevant times herein.

39.     Upon information and belief, Defendants MIMGT and MITG corporate names reflects the initials of the immediate family members of GRECIA THEODOROBEAKOS and MICHAEL THEODOROBEAKOS.

40.     Upon information and belief, Defendant MICHAEL THEODOROBEAKOS is responsible for the day to day management of  MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO. including hiring and firing, securing work, scheduling employees to work at jobsites, supervising work at company jobsites.

41.     Upon information and belief, Defendant GRECIA THEODOROBEAKOS is responsible for the office and administrative operation of MINOSIS, MINOSIS GROUP, MIMGT and MARIDO.

42.     Upon information and belief, Defendants MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS have exclusive signing authority for paychecks for employees of MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO.

43.     Upon information and belief, Defendants MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS have signed paychecks for employees of MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO.

44.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO employed three (3) non-party field supervisors or foreman: Adolfo Veloz, Jeronimo Veloz and Juan Garcia to supervise its Local 12 employees and non-union employees in the performance of covered "mechanical insulation" work at its jobsites over the last six (6) years.

45.    Upon information and belief, non-party Adolfo Veloz and Jeronimo Veloz are brothers. Messrs. Veloz's children also work for the Defendants.

46.    Upon information and belief, Defendant MICHAEL THEODOROBEAKOS and non-party Adolfo Veloz are brothers-in-law.

47.    Upon information and belief, MIMGT, MITG and MARIDO entities are alter-egos of MINOSIS and MINOSIS GROUP and perform construction bargaining unit work within the craft and geographical jurisdictions of Local 12.

48.    Upon information and belief, MIMGT, MITG and MARIDO entities are double-breasted entities of MINOSIS and MINOSIS GROUP and perform construction bargaining unit work within the craft and geographical jurisdictions of Local 12.

49.    Upon information and belief, MIMGT, MITG and MARIDO, MINOSIS and MINOSIS GROUP are a single employer and perform construction bargaining unit work within the craft and geographical jurisdictions of Local 12.

50.    Upon information and belief, Defendants disregarded corporate formalities and transferred funds between MIMGT LLC, MITG and MARIDO, MINOSIS and MINOSIS GROUP. MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS also frequently negotiated grievances with employee's overpayment of wages, hours and overtime.

51.    Upon information and belief, MINOSIS and MINOSIS GROUP used the MIMGT, MITG and MARIDO entities to avoid obligations under the CBA, including its obligation to pay wages to Local 12 and its members and make contributions to the Funds for work performed by covered workers.

52.    Based on the foregoing, Defendants have been operating in such a way that they are alter-egos of each other.

53.     Based on the foregoing, Defendants have been operating in such a way that they constitute a single employer.

54.     Based on the foregoing, Defendants have been operating in such a way that they constitute a double-breasted employer, established to avoid MINOSIS and MINOSIS GROUP obligations to the Union and Funds, in violation of the CBA.

55.     As an alter-ego, single employer and/or double-breasted employer, MIMGT, MITG, AND MARIDO are bound to the CBA between Local 12 and MINOSIS and MINOSIS GROUP and were required to report the hours worked by the MIMGT, MITG and MARIDO employees to the Funds and remit contributions for the covered hours worked. MINOSIS and MINOSIS GROUP are liable for all hours paid to workers who performed covered work.

56.     As alter-egos, single employers and/or double-breasted employers with MINOSIS and MINOSIS GROUP, MIMGT, MITG and MARIDO entities are bound to the CBA between Local 12 and MINOSIS and MINOSIS GROUP and are, therefore, jointly and severally liable for all hours paid to workers who performed covered work.

57.     Defendants MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO continue to breach the CBAs and operate an alter-ego or double-breasted organization. Local 12 is entitled to the lost man hours as a result of Defendants' sham operation.

**MINOSIS, MINOSIS GROUP, MIMGT, MITG AND MARIDO HAVE FAILED TO EMPLOY LOCAL 12 MEMBERS, REPORT HOURS, PAY UNION WAGES AND PAY FRINGE BENEFIT CONTRIBUTIONS**

58.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MITG and MARIDO employed Union and non-union employees at construction projects throughout New York City and Long Island performing "mechanical insulation" in both commercial, residential, and governmental buildings.

59. Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO have violated the CBA by failing to employee Local 12 members to perform mechanical insulation covered under the jurisdiction of the CBA at more than fifty (50) project jobsites in the last six (6) years. The names of the projects and/or locations include but are not limited to the following:

1. SUNY Downstate Medical Center
2. 50 PENN, East New York
3. The Pierce New York Hotel
4. 450 West 33rd Street
5. Bank of America Tower
6. 28 Liberty Street
7. 299 Park Avenue, 39th Floor King Street Capital
8. 299 Park Avenue, 16th Floor Fisher Park Lane
9. One Liberty Plaza
10. J.P. Morgan Chase 17th Floor
11. J.P. Morgan Chase 24th Floor
12. J.P. Morgan Chase 29th Floor
13. J.P. Morgan Chase Lobby and Basement
14. 33 Maiden Lane, Floor L-1
15. 590 Madison Avenue
16. 60 Broad Street
17. 1330 Avenue of the Americas
18. GM Building, Estee Lauder Companies
19. 100 Church Street
20. 601 Lexington Avenue
21. Grace Building – 1114 Avenue of the Americas
22. Deutsche Bank – 60 Wall Street
23. Federal Reserve Bank of New York
24. 275 7th Avenue
25. 120 Broadway 1st, 3rd, 12th, 22nd, 23rd,24th, 25th, 26th Floors
26. 25 Broadway
27. 200 W 41st Street
28. 125 Broad Condominium
29. Federal Office Building - 90 Church
30. Verizon – 230 West 36th Street
31. 750 7th Avenue
32. 590 Madison Avenue
33. 60 Hudson
34. New York Presbyterian
35. 540 Madison Avenue
36. 1166 Avenue of the Americas

37. The Lexington Hotel NYC
38. 1 New York Plaza
39. Citi – Greenwich Street
40. 4 New York Plaza
41. 250 Vesey Street
42. J.P. Morgan 4 Metro Tech
43. BNY Mellon BRC Atrium
44. 345 Park Ave
45. 2 World Financial Center
46. MoMA QNS The Museum of Modern Art
47. Trinity Church Wall Street
48. The Eclipse Locust Manor
49. Bronx V.A. Hospital
50. NYC Department of Environmental Protection 59-17 Junction Blvd.
51. Queens College

60.     Upon information and belief, Defendant MICHAEL THEODOROBEAKOS secured mechanical insulation work for the Defendants MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO on the projects referenced in paragraph "59" above and various other projects during the past six (6) years.

61.     Upon information and belief, Defendant MICHAEL THEODOROBEAKOS, scheduled the employees of Defendants MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO to work on the projects referenced in paragraph "59" above.

62.     Upon information and belief, during the period 2016 through 2019, Defendant MICHAEL THEODOROBEAKOS scheduled union members James "Jimmy" Market, Thomas "Tommy" Vincent and Zoran Miranovic to work alongside non-union employees of MINOSIS GROUP, MIMGT and MARIDO to perform covered work under the Local 12 CBA at the SUNY Downstate ("Brooklyn") Health Sciences University project (hereinafter referred to as the "SUNY Downstate Medical Center").

63.     Upon information and belief, in 2019, Defendant MICHAEL THEODOROBEAKOS scheduled union members James "Jimmy" Market, Thomas "Tommy"

Vincent and Zoran Miranovic to perform covered work under the Local 12 CBA at the Trinity Church project with non-union employees of MIMGT and MARIDO who were also performing covered work.

64.     Upon information and belief, in 2020, Defendant MICHAEL THEODOROBEAKOS scheduled union members James "Jimmy" Market, Thomas "Tommy" Vincent and Zoran Miranovic to perform covered work under the Local 12 CBA at the MoMA Queens project with non-union employees of MIMGT and MARIDO who were also performing covered work.

65.     Upon information and belief, Defendants MIMGT and MARIDO routinely interchanged their non-union workforce depending on the kind of project.

66.     Upon information and belief, employees of Defendants MIMGT and MARIDO who performed covered "mechanical insulation" work received different paychecks from both companies depending on whether the jobsite location was for private or public work.

67.     Upon information and belief, employees of Defendants MIMGT and MARIDO who performed covered "mechanical insulation" work received different pay rates from both companies depending on whether the project was for a private or public job.

68.     Upon information and belief, the SUNY Downstate Medical Center project was a public job requiring the payment of New York State prevailing wages. For periods during 2016 to 2019, Local 12 union members worked alongside as many as fourteen (14) non-union employees performing mechanical insulation. The Local 12 union members were paid prevailing union wages by MINOSIS and/or MINOSIS GROUP and contributions were contributed to the Funds on their behalf. The non-union workforce under the direction and supervision of MICHAEL THEODOROBEAKOS performed mechanical insulation alongside Local 12 members and were

paid wages by MARIDO. No contributions, wages or assessments were paid to Local 12, its members or the Funds for the non-union workers who performed covered work.

69.      Upon information and belief, the Trinity Church (Manhattan) project was a privately owned jobsite where the owner and/or general contractor required the use of union labor. In 2019, Local 12 union members worked alongside non-union employees performing mechanical insulation. The Local 12 union members were paid prevailing union wages by MINOSIS and/or MINOSIS GROUP and contributions were contributed to the Funds. Some of the same non-union workers that performed mechanical insulation alongside the Local 12 members at the SUNY Downstate Medical Center project also worked at the Trinity Church project performing covered work under the Local 12 CBA. The same non-union workers at Trinity Church were paid substantially less wages by MIMGT. No contributions were paid to the Funds for the non-union workers who performed covered work.

70.      Upon information and belief, the MoMA Queens project was a privately owned jobsite. In 2020, Local 12 union members worked alongside non-union employees performing mechanical insulation. The Local 12 union members were paid prevailing union wages by MINOSIS and/or MINOSIS GROUP and contributions were contributed to the Funds on their behalf. Some of the same non-union workers that performed mechanical insulation alongside the Local 12 members at the SUNY Downstate Medical Center project worked at the MoMA Queens performing covered work. The same non-union workers at MoMA Queens were paid substantially less wages by MIMGT. No contributions were paid to the Funds for the non-union workers who performed covered work.

71.      Upon information and belief, Defendant MICHAEL THEODOROBEAKOS visited and supervised the progress of the mechanical insulation work being performed at SUNY

Downstate Medical Center, Trinity Church and MoMA Queens as well as other projects not named herein.

72.     Upon information and belief, union and non-union employees of Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO were required to pass through security checkpoints to enter most worksites.

73.     Upon information and belief, Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO would obtain access and/or security badges to enter the jobsites for its union and non-union employees. In general, security badges that were issued by jobsites varied but all contained the names of the employee, names of the project, employer name and sometimes a photo of the employee.

74.     Upon information and belief, field supervisors or foreman of Defendants MINOSIS, MINOSIS GROUP, MIMGT and MARIDO obtained access and/or security badges to enter the jobsites for non-union employees that indicated that they worked for the Union Companies.

75.     Upon information and belief, at the Trinity Church project, field supervisors or foremen of Defendants MINOSIS, MINOSIS GROUP, MIMGT LLC and MARIDO instructed non-union employees to enter through an alternative entrance to prevent non-union employees from using security check and sign-in process in an effort to conceal their presence on the jobsite where they were performing work covered by Local 12's CBA.

76.     Upon information and belief, Defendants have for the past six (6) years engaged in a scheme to avoid their obligations under the Local 12 CBAs by failing to pay proper wages and fringe benefits through its non-union entities MIMGT, MITG, MARIDO by using non-union employees to perform covered work.

77.     Upon information and belief, Defendants have for past six (6) years breached the subcontracting clause of the Local 12 CBAs by using non-union employees to perform covered work under Local 12's CBA.

78.     Upon information and belief, Defendants MIMGT and MARIDO routinely interchanged their workforce and employees depending on jobsites and whether the job required payment of prevailing wages.

79.     Upon information and belief, employees of Defendants MIMGT, MITG and MARIDO who performed covered "mechanical insulation" work received paychecks from both companies depending on whether the jobsite location was for private or public work.

80.     Upon information and belief, employees of Defendants MIMGT, MITG and MARIDO who performed covered "mechanical insulation" work received vastly different pay rates from both companies depending on whether the jobsite was for private or public work.

81.     Upon information and belief, on numerous jobsites, Defendants MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS, intentionally and knowingly failed to employ Local 12 members on the projects referenced in paragraph "59" above in violation of the Local 12 CBA by using related non-union companies to perform covered work.

## DEFENDANTS MINOSIS, MINOSIS GROUP, MIMGT, MITG AND MARIDO HAVE DEFRAUDED THE FUNDS

82.     GRECIA THEODOROBEAKOS was responsible for creating and submitting to the Funds the weekly payroll reports that purported to set forth the mechanic and apprentice hours spent performing covered work by employees of MINOSIS and its alter-egos during each week. GRECIA THEODOROBEAKOS submitted the weekly reports each week for at least the last six (6) years. Each of those hundreds of weekly reports were false because they failed to include contributions for hours worked by the employees of alter-egos of MINOSIS.

83.     Pursuant to the CBA, signatory employers were required to properly report all such covered work to the Plaintiffs. Specifically, the CBA at Article XVIII states as follows:

> In order to protect and preserve for the Employees covered by this Agreement all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: **If and when the Employer shall perform any on-site construction work of the type covered by this Agreement under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer, through its officers, directors, partners, or stockholders, exercises either directly or indirectly, any management, control or ownership, the terms and conditions of this Agreement shall be applicable to all such work.** (Emphasis added)

84.     By submitting these false weekly reports which failed to include covered work performed by the various alter-ego entities, GRECIA THEODOROBEAKOS knowingly made a misrepresentation of material fact to Plaintiffs. The Plaintiffs reasonably relied upon these reports, especially in light of the clear language in the CBA, to determine whether proper contributions were being paid on behalf of employees performing covered work.

85.     As a result of these misrepresentations, Plaintiffs have not received the required fringe benefit contributions for the Funds and have therefore been harmed.

86.     In or around July 2017, during a field audit conducted by the Funds' auditors of MINOSIS GROUP, MICHAEL THEODOROBEAKOS represented to the Funds' auditors that he and GRECIA THEODOROBEAKOS also owned MIMGT, but that MIMGT was a general contractor that performed home renovation and remodeling work. However, upon information and belief, Defendant MIMGT regularly performed mechanical insulation work, including at projects identified infra at paragraph "59" above, but failed to remit contributions to the Funds for employees' performance of such work. Such a misrepresentation of material fact was knowingly

made to prevent the Funds' auditors from reviewing its other companies accounts in greater detail and to avoid detection of Defendants' alter-ego scheme to defraud Plaintiffs.

87.     During this same field audit, MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS also represented to the Funds' auditors that payments listed as "expenses to subcontractors" made to its former, defunct, company MONOSIS INC., were for debts on a credit account held under MONOSIS INC.[1] from when it was still operating. This was a misrepresentation of another material fact, as the credit account remained open and materials continued to be purchased using the defunct Monosis Inc. credit account.  Upon information and belief, such a misrepresentation was made with the intent to prevent the Funds' auditors from reviewing its other companies accounts in greater detail and to avoid detection of Defendants' alter-ego scheme to defraud Plaintiffs.

88.     Plaintiffs reasonably relied on this material misrepresentation and as a result, have not received the required fringe benefit contributions for the Funds, and therefore been harmed.

## AS AND FOR A FIRST CLAIM FOR RELIEF

89.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "88" of this Complaint with the same force and effect as though the same were set forth at length herein.

90.     By reason of the aforementioned, at all relevant times, MIMGT, MITG and MARIDO as the alter-ego of MINOSIS and MINOSIS GROUP, were and remain bound by the terms and conditions of the applicable CBAs and trust indentures.

---

[1] By way of background, there have been multiple entities formed and subsequently dissolved by Defendants over the past 30 years.

91.     The applicable CBAs and trust indentures provide, *inter alia*, for an employer, and any related company, to pay wages and assessments on behalf of its employees who perform covered employment under such agreements, and remit fringe benefit contributions to the Funds.

92.     Defendants MINOSIS and MINOSIS GROUP have breached the applicable CBAs by failing, refusing, or neglecting to pay employee benefit fund contributions due for covered work performed within the craft and geographical jurisdiction of Local 12.

93.     Section 515 of ERISA, 29 U.S.C. §1145, required "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement…[to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

94.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary: (A) to enjoin any act or practice of this title or the terms of the plan; or (B) to obtain other appropriate equitable relief; (i) to redress such violation; or (ii) to enforce any provision of this title or the terms of the plan."

95.     Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) mandates that, "[i]n any action bought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:

      a.     the unpaid contributions;
      b.     interest on the unpaid contributions,
      c.     an amount equal to the greater of-
             i. interest on the unpaid contributions, or
             ii. liquidated damages…in an amount not in excess of 20 percent of
             the [unpaid contributions]
      d.     reasonable attorney's fees and costs of the action, to be paid by the
             defendant, and
      e.     such other legal or equitable relief as the court deems appropriate…"

96.     MINOSIS and MINOSIS GROUP's failure to remit contributions to the Funds for hours worked by individuals performing covered work pursuant to the CBA constitutes a failure to make contributions in accordance with the terms of the applicable CBA, in violation of §502 and §515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under §502(a)(3) or ERISA, 29 U.S.C. §1132(a)(3).

97.     The MIMGT, MITG and MARIDO entities are alter-egos of MINOSIS and MINOSIS GROUP, are alter-egos, single employers or double-breasted employers and, therefore, MINOSIS and MINOSIS GROUP are obligated under the CBA to make contributions for covered work performed by the MIMGT, MITG and MARIDO entities to the Funds.

98.     Defendants, by virtue of their failure to remit the unpaid contributions, are subject to an injunction ordering them to immediately pay all unpaid contributions. Public policy and the balance of equities favors injunctive relief against Defendants, requiring the Defendants to pay all past and current delinquencies to the Funds. Without injunctive relief, the Funds and their participants and beneficiaries will be irreparably harmed.

99.     Defendants are also required to pay interest on the unpaid contributions from the date they were due to the date they are received by the Funds, plus liquidated damages, audit costs, attorneys' fees and costs in accordance with the CBA and §502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2).

100.    Defendants, by failing to pay contributions, interest and additional damages, as required by the CBA and the Trust Agreements, have violated §515 of ERISA, 29 U.S.C. §1145, in that they have failed to make contributions in accordance with the terms of the plan documents of the Funds, supporting an action under §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and are subject to the remedies under §502(g) of ERISA, 29 U.S.C. §1132(g).

## AS AND FOR A SECOND CLAIM FOR RELIEF

101.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1"

through "100" as though fully set forth at length herein.

102.    Section 301(a) of the LMRA, 29 U.S.C. §185(a) provides that:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce as
> defined in this chapter, or between any such labor organizations, may be
> brought in any district court of the United States having jurisdiction of the
> parties, without respect to the amount in controversy or without regard to
> the citizenship of the parties.

103.    Section 301(b) of the LMRA, 29 U.S.C. §185(b) provides that "[a]ny labor

organization which represents employees in an industry affecting commerce as defined in this

chapter and any employer whose activities affect commerce as defined in this chapter shall be

bound by the acts of its agents.

104.    The CBA prohibited MINOSIS and MINOSIS GROUP from employing anyone

other than Local 12 member on any covered work and prohibited MINOSIS and MINOSIS

GROUP from subcontracting any covered work to non-signatory employer.

105.    MINOSIS and MINOSIS GROUP, through its alter-egos, MIMGT, MITG and

MARIDO , hired non-union workers to perform covered work who received wages, working

conditions, benefits and a standard of employment less favorable than those provided in the CBA.

106.    MINOSIS and MINOSIS GROUP and its alter-egos, MIMGT, MITG and

MARIDO, failed to remit contribution payments to the Funds for the hours worked by these

workers in violation of the CBA.

107.    The Union is entitled, pursuant to LMRA §301(a) and the CBA, to collect the

unpaid wages and assessments for the Defendants failure to employee Local 12 members to

perform covered work under the Local 12 CBA.

## **AS AND FOR A THIRD CLAIM FOR RELIEF**

108.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "107" as though fully set forth at length herein.

109.    MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS, MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO knowingly committed fraud against the Funds by creating and orchestrating a scheme to hire outside non-union workers through MIMGT, MITG and MARIDO and omit hours worked in covered employment from the remittance reports sent by MINOSIS and MINOSIS GROUP to the Funds.

110.    MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS made or caused to be made, materially false representations and omissions of existing facts to the Funds by filing false remittance reports with the Funds that failed to disclose the hours being worked in covered employment through MIMGT, MITG and MARIDO and knowingly failing to pay contributions to the Funds.

111.    The Funds reasonably relied to their detriment on the material and false representations and omissions made by MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS concerning the hours of covered work of Defendants' employees.

112.    Particular facts demonstrating the creation and the operation of the MIMGT and MARIDO entities as alter-egos of MINOSIS and MINOSIS GROUP  are exclusively within the Defendants' knowledge.

113.    Defendants acted in an intentional and reckless manner, consciously disregarded the Plaintiffs' rights, and showed wanton dishonesty and disregard of their obligations to the Funds. The fraudulent acts committed by Defendants exhibit a high level of moral culpability aimed at the public.

114.     Defendants     MICHAEL     THEODOROBEAKOS     and     GRECIA THEODOROBEAKOS are jointly and severally liable with MINOSIS, MINOSIS GROUP, MIMGT and MARIDO for any contributions due and owing pursuant to §§502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, based on their knowing participation in a scheme to underpay contributions to the Funds, plus interest, liquidated damages, attorneys' fees and costs.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

115.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through 114" as though fully set forth at length herein.

116.     Pursuant to the terms and conditions of the applicable CBA, MINOSIS and MINOSIS GROUP, are required to provide access to the records necessary for the Funds to determine whether MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO complied with the obligation to contribute to the Funds.

117.     MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO breached the provisions of the CBA by failing to allow Plaintiffs to schedule and complete an audit of MINOSIS, MINOSIS GROUP, MIMGT and MARIDO entities books and records for the period December 1, 2014 through December 1, 2020.

118.     MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO are obligated to pay the attorney and auditor fees and court costs incurred by the Plaintiffs pursuant to the CBA, the Trust Agreements and/or 29 U.S.C. §1132 (g)(2)(D).

119.     According to the CBA and/or 29 U.S.C. §1132 (g), MINOSIS, MINOSIS GROUP, MIMGT, MITG  and MARIDO are obligated to pay any fringe benefit contributions shown to be due upon completion of the audit, as well as liquidated damages and interest.

120.    Pursuant to 29 U.S.C. §1132(g)(2)(B), Plaintiffs are entitled to an amount equal to the greater of: (a) double interest; or (b) interest plus liquidated damages.

121.    As a direct and proximate result of MINOSIS, MINOSIS GROUP, MIMGT, MITG and MARIDO's violation of its contractual and statutory duties, MINOSIS and MINOSIS GROUP shall be required to provide access to its records for the period December 1, 2014 through December 1, 2020 in order to perform a complete and accurate audit, and pay all contributions shown to be due upon completion of said audit, together with statutory remedies including pre-judgment interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and the costs and disbursements of this action pursuant to E.R.I.S.A. §502(g), 29 U.S.C. §1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' respectfully request the Court enter judgment:

1. Declaring MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. to be alter-egos, single employers and/or double-breasted enterprises with each other;

2. Declaring MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. entities jointly and severally liable for unpaid benefit contributions and statutory and contractual damages owed to Local 12 and the Funds for each hour of work covered by a CBA between MINOSIS INC., MINOSIS GROUP, INC., MIMGT, LLC, MITG LLC and MARIDO INDUSTRIES, INC. performed by employees, including but not limited to non-union employees hired to perform mechanical insulation, on behalf of MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. entities. and/or Defendants violation of the Local 12 CBA subcontracting clause;

3. Declaring MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLCand MARIDO INDUSTRIES, INC. entities jointly and severally liable for unpaid wages and union assessments for and contractual damages owed to Local 12 for each hour of work covered by a CBA between MINOSIS, INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. performed by employees, including but not limited to non-union employees hired to perform mechanical insulation, on behalf of MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. entities and/or Defendants violation of the Local 12 CBA subcontracting clause;

4. Declaring MICHAEL THEODOROBEAKOS and GRECIA THEODOROBEAKOS, MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. entities engaged in a scheme to defraud the Funds of employee benefit contributions; and thereafter entering judgment in favor of Plaintiffs and against all Defendants, jointly and severally, for injunctive relief ordering Defendants to pay all unpaid delinquencies owed to Plaintiffs' Funds;

5. Entering judgment in favor of Plaintiffs and against Defendants MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC., jointly and severally, for injunctive relief ordering Defendants to pay all unpaid delinquencies owed to Plaintiffs Funds in an amount to be determined at trial, together with statutory and contractual interest, liquidated damages, and reasonable attorneys' fees and costs, including the costs of collecting the delinquency, as set forth under §502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) and CBA, and requiring Defendants MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO

INDUSTRIES, INC.  to accurately report work covered by a CBA between the Union and Defendants MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC. and remain current in contributions to the Funds;

6. Declaring that Defendants must permit Plaintiffs to schedule and complete an accurate audit of MINOSIS INC., MINOSIS GROUP, INC., MIMGT LLC, MITG LLC and MARIDO INDUSTRIES, INC.  entities books and records for the period December 1, 2014 through December 1, 2020;

7. Awarding Plaintiffs their reasonable attorneys' fees, disbursements and costs in collecting the delinquencies and in prosecution of this action, pursuant to  §502(g)(2) of ERISA, 29 U.S.C. §1132(G)(2), and the CBA; and

8. Ordering such other legal and/or equitable relief as the Court deems proper.

Dated: Woodbury, New York
      December 7, 2020

COLLERAN, O'HARA & MILLS, L.L.P.

By:    /s/ John S. Groarke        
      /s/ Patricia L. Boland      
JOHN S. GROARKE (JG9031)
PATRICIA L. BOLAND (PB8385)
*Attorneys for Plaintiffs*
100 Crossways Park Drive West, Suite 200
Woodbury, New York 11797
Telephone: (516) 248-5757
Facsimile: (516) 742-1765
jsg@cohmlaw.com
plb@cohmlaw.com